UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENNAR MARE ISLAND, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STEADFAST INSURANCE COMPANY,<br><br>    Defendant. | No.  2:16-cv-00291-KJM-KJN |
| LENNAR MARE ISLAND, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>STEADFAST INSURANCE COMPANY,<br><br>    Defendant. | No. 2:12-cv-02182-KJM-KJN<br><br>ORDER |
| AND RELATED COUNTERCLAIMS. | |

A pair of familiar combatants is before the court in a new case, No. 16-0291 captioned above.  Steadfast Insurance Company moves to dismiss three of Lennar Mare Island LLC's (LMI's) claims under Federal Rule of Civil Procedure 12(b)(6).  The court held a hearing

/////

1

on June 3, 2016.  Ryan Werner and Alan Packer appeared for LMI, and John Purcell appeared for Steadfast.  The motion is denied.

I.	ALLEGATIONS AND PROCEDURAL HISTORY

Because Steadfast moves to dismiss under Rule 12(b)(6), as a factual matter, the court assumes LMI's complaint accurately depicts the parties' relationship.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Several years ago, LMI agreed to take on an environmental remediation project at the Mare Island Naval Shipyard in Vallejo California, which for more than 140 years was a U.S. Navy base.  First Am. Compl. ¶¶ 5–8, ECF No. 9.  Steadfast issued an insurance policy to LMI in 2001, the Environmental Liability Insurance policy, or ELI policy.  *Id.* ¶ 10.  The ELI policy was meant to protect LMI against the risks of unknown pollution at Mare Island, which were not covered by other financial and insurance arrangements.  *Id.* ¶ 12.

LMI has submitted claims under the ELI policy, which remains in effect until 2021, but Steadfast has not paid.  *Id.* ¶¶ 12, 16.  Rather, Steadfast delayed its responses to LMI's claims, made unreasonable demands for documentation, mischaracterized facts, and conducted no investigations.  *Id.* ¶¶ 16, 19.  Steadfast used its contractual obligations as bargaining chips in settlement negotiations with LMI, which resulted in settlement agreements that Steadfast later violated nonetheless.  *Id.* ¶ 20.  LMI believes Steadfast's position will not change, and it worries that once the ELI policy expires in 2021, delays will have prevented LMI from discovering pollution that would have been covered by the policy, but it will be too late.  *Id.* ¶ 21.

In 2012, LMI filed a complaint against Steadfast in California state court, and Steadfast removed the case to this court a few months later.  Not. Removal Ex. A, *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 12-2182 (E.D. Cal. removed Aug. 21, 2012), ECF No. 1.  This removed case is the second case captioned above, No. 12-2182.  LMI amended its complaint in January 2013.  No. 12-2182, ECF No. 22.  As in the new 2016 case, LMI alleged in its 2012 complaint that Steadfast had refused to pay for claims under the ELI policy or had delayed payments.  *See generally id.*  The 2012 case remains pending before the undersigned; a final pretrial conference and trial are scheduled soon, for August 2016.  No. 12-2182, ECF No. 271.

1    The 2016 case was filed in this court in February of this year, ECF No. 1, and LMI amended its complaint in April, ECF No. 9.  It alleges Steadfast has denied additional claims in violation of its obligations under the ELI policy.  LMI asserts five claims: (1) breach of contract for denying insurance claims under the ELI policy; (2) tortious breach of the covenant of good faith and fair dealing implicit in that policy; (3) breach of contract in connection with three settlement agreements between LMI and Steadfast; (4) declaratory relief of rights under the ELI policy; and (5) declaratory relief of rights under the settlement agreements.  First Am. Compl. at 5–18.  It requests damages, prejudgment interest, punitive damages, various declarations of the parties' respective rights under the ELI policy and settlement agreements, attorneys' fees and costs, and other appropriate relief.  *Id.* at 18–19.

Although Steadfast denies its liability in total, it moves to dismiss only the claims related to the ELI policy: claims one, two, and four.  Mot. Dismiss, ECF No. 11; Mem. P. & A., ECF No. 11-1.  Its motion is based on three arguments.  First, it argues LMI's 2016 complaint impermissibly duplicates several of the claims at issue in the 2012 case.  Mem. at 3–7.  Second, it argues several of LMI's allegations fall outside the limitations period established by California law.  *Id.* at 7–8.  And third, it argues LMI's request for punitive damages is unsupported by allegations of maliciousness, oppression, or fraud, as required by California law.  *Id.* at 8–13.  LMI has opposed the motion, ECF No. 16, and Steadfast replied, ECF No. 18.

Meanwhile, LMI moved to consolidate the 2012 and 2016 cases.  ECF No. 14.  It argues the two cases involve the same policy, the same parties, and the same historical background.  Mem. P. & A. at 1–2.  "The only real distinctions," LMI argues, "are the specific individual claims involved," and the fact that the 2012 case involves a third party, LMI's contractor, CH2M Hill Constructors, Inc.  *Id.*  Steadfast opposes that motion.  ECF No. 15.  It remains pending, and a hearing is set for June 17, 2016.

II.    LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

3

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The Ninth Circuit has "settled on a two-step process for evaluating pleadings":

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.
>
> In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on judicial experience and common sense.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations and quotation marks omitted).

III.    DISCUSSION

As noted above, Steadfast argues LMI's 2016 claims duplicate its 2012 claims, that its second claim falls outside the limitations period, and that the facts LMI alleges do not show this is a case where punitive damages could be awarded.

A.    Claim-Splitting

"Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quotation marks and citation omitted), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).[1]  A district court's discretion to manage its docket allows a number of solutions when a plaintiff appears again with a duplicative complaint.  The court may dismiss the later-filed action with or without prejudice, stay the second case until the first is resolved, enjoin litigation of the second case, or

---

[1] In some cases, a claim may be precluded because it was adjudicated against someone else.  In *Taylor*, the Supreme Court held that absentees are not bound under this rule except in a limited set of circumstances.  *See* 553 U.S. at 893–904.  It rejected the doctrine commonly known as "virtual representation," in which "a person may be bound by a judgment if she was adequately represented by a party to the proceeding yielding that judgment." *Id.* at 896, 898.  Because the *Adams* court relied on this virtual-representation rule, 487 F.3d at 691–92, its opinion is no longer good law in that respect.  *See Patten v. Clark*, 623 F. App'x 889, 890 (9th Cir. 2015).  Otherwise the *Adams* court's discussion of impermissible claim-splitting remains precedential.  *See, e.g.*, *In re Consol. Salmon Cases*, 688 F. Supp. 2d 1001, 1007–11 (E.D. Cal. 2010).

consolidate the two. *Id.* Steadfast requests dismissal. LMI disagrees that its 2016 claims duplicate its 2012 claims and opposes the motion, although it does move separately to consolidate the 2012 and 2016 cases. Neither party addresses the possibility of a stay or an injunction.

"To ascertain whether successive causes of action are the same," the court applies "the transaction test, developed in the context of claim preclusion." *Id.* at 689. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* (citation and quotation marks omitted). Four criteria are relevant:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (citation and quotation marks omitted). "The last of these criteria is the most important." *Id.* (citation and quotation marks omitted).

In *Adams*, the plaintiff moved to amend her complaint to add four claims and several defendants, but the district court denied her motion because it was filed long after the deadline for amendments and included no explanation for the delay. *Id.* at 687. The case was then tried to a jury, which returned a verdict for the defendants. *Id.* The Ninth Circuit affirmed the district court's decision not to allow an amendment and affirmed the judgment. *Id.* Meanwhile, after the district court denied her motion for leave to amend, the plaintiff had filed a new complaint that included the very same claims she had sought to allege by amendment in the previous case. *Id.* at 687–88. The district court dismissed this second complaint with prejudice. *Id.* The circuit court affirmed that order as well. *Id.* at 694.

Here, by contrast, it does not appear LMI has attempted to circumvent this court's orders in the 2012 case, but it may fairly be said that LMI's 2012 and 2016 cases "arise out of the same transactional nucleus of facts," "the most important" criterion of the transaction test. *Id.* at 689. The two cases involve the same parties in the same positions, the same insurance contract, the same physical location, and the same or very similar questions of law. Only two

features distinguish the 2012 case from the 2016 case: the individual insurance claims in question and CCI's absence as a counter-defendant and counter-claimant in the 2016 case.

In this respect, the two cases here resemble the two cases before the Eleventh Circuit in *Trustmark Insurance Co. v. ESLU, Inc.*, 299 F.3d 1265 (2002). In *Trustmark*, the defendant had agreed to underwrite insurance policies for the plaintiff. *Id.* at 1266. The plaintiff later discovered the defendant had miscalculated deductibles, and sued. *Id.* Midway through the litigation, after the deadline for amendments had passed, the plaintiff discovered several more miscalculations and moved to amend its complaint. *Id.* at 1266–67. The district court denied the motion and the case went to trial. *Id.* at 1267. The jury returned a verdict for the defendant. *Id.* The frustrated plaintiff filed a new lawsuit against the same defendant based on the allegations it had not been allowed to include in an amended complaint. *Id.* The district court dismissed the action under Rule 12(b)(6), and the circuit court affirmed. *Id.* at 1267, 1272. On appeal, the plaintiff argued the second case was not barred because it was based on a new series of contract breaches. *Id.* at 1270. The Eleventh Circuit was unpersuaded: "The similarities between the two lawsuits are clear. Both involve breaches of the same contract, committed by the same party and involving the same general type of conduct." *Id.* The same may be said of LMI's two lawsuits. "A series of breaches of the same contract, all occurring before filing suit, should be brought in that suit." *Id.*

Notably the Eleventh Circuit's decision in *Trustmark* refers to contract breaches "all occurring before filing suit." *Id.* When it comes to successive allegations, timing often plays a decisive role. A disappointed plaintiff may not relitigate the events underlying a previous judgment, but preclusion rules do not bar the "litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *accord Adams*, 487 F.3d at 693 ("While we might have found [dismissal was] an abuse of discretion had the claims in [the plaintiff's] second suit been based on events occurring subsequent to the filing of her complaint in the first action, that is not the case here."); *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990) (collecting authority for the

/////

6

1    proposition that claim preclusion does not "bar a subsequent suit for any breach that had not
2    occurred when the first suit was brought.").

3    Timing would also have affected any decision by LMI to instead seek leave to
4    amend its pleading in the 2012 case; the deadline for amendments in that case has long passed.
5    *See, e.g.*, Order Aug. 17, 2015, No. 12-2182, ECF No. 290; *but cf.* Fed. R. Civ. P. 15(b)
6    (amendments during and after trial).  Alternatively, as LMI's counsel intimated at hearing, if
7    LMI's 2016 claims arose only after its 2012 case began, it could have sought leave to file a
8    supplemental complaint in the 2012 case.  *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable
9    notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out
10   any transaction, occurrence, or event that happened after the date of the pleading to be
11   supplemented.").

12   Here, it is unclear when some of LMI's new claims materialized, but many of its
13   allegations concern events after 2013.  *See, e.g.,* First Am. Compl. ¶¶ 33(c), (q).  If LMI believed
14   Steadfast breached the ELI policy again after the 2012 case was underway, a motion to amend its
15   2012 complaint or file a supplemental complaint would not have been out of order.  But if the
16   breaches at issue in LMI's 2016 complaint all occurred before the 2012 case was filed, they
17   should have been asserted in the same case.

18   In summary, LMI's 2016 claims "arise out of the same transactional nucleus of
19   facts" and "involve infringement of the same right" under the ELI policy, and LMI litigates those
20   claims against the same party who is the defendant in a previously filed case.  But given the
21   uncertainty about which newly alleged breaches occurred after LMI's 2012 complaint was filed,
22   outright dismissal would be the wrong choice here.  Steadfast's motion is denied to that extent.

23       B.    <u>Statute of Limitations</u>

24   If a plaintiff's allegations show its claims are clearly untimely, those claims may
25   be dismissed under Rule 12(b)(6).  *See, e.g.*, *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999,
26   1004 (9th Cir. 2014); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969
27   (9th Cir. 2010).  The allegations of LMI's 2016 complaint do not show the second claim is
28   untimely.  As noted, LMI alleges no dates to show when a breach occurred.  It does allege

7

1  Steadfast made certain misrepresentations several years ago, *see* First Am. Compl. ¶ 33(q)(i), but
2  the complaint asserts breaches of the implied covenant of good faith and fair dealing, not fraud.
3  In this respect also, Steadfast's motion is denied.

### C. Punitive Damages

This is an action in diversity. "Federal district courts sitting in diversity apply the substantive law of the forum state, but apply procedural rules as stated in the Federal Rules of Civil Procedure." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1183–84 (E.D. Cal. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Substantive California law allows a tort claimant to seek punitive damages, *id.* at 1184, but what a plaintiff must allege to survive a motion to dismiss under Rule 12(b)(6) is a procedural requirement controlled by federal law. *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010).[2] Under federal procedural law, as highlighted above, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under California law, tort damages may be available to an insured plaintiff who proves the defendant insurer breached its implied covenant of good faith and fair dealing. *See* Cal. Civ. Code § 3294(a); *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43–44 (1999).

---

[2] District courts in California agree that federal procedural law describes what is necessary to state a claim, but disagree about what federal law requires of a request for punitive damages. *Compare*, *e.g.*, *Kelly*, 750 F. Supp. 2d at 1146–47 (applying the standard rule of *Iqbal*), *with, e.g.*, *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273–74 (N.D. Cal. 2015) (requiring only a simple request for punitive damages). In previous orders, this court has not adopted a completely consistent position. *Compare Granger v. Lowe's Home Centers, LLC*, No. 14-1212, 2014 WL 4976134, at *3–4 (E.D. Cal. Oct. 3, 2014), *with Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.*, No. 15-00861, 2015 WL 5436784, at *11 (E.D. Cal. Sept. 15, 2015).

When it comes to Rule 12(b)(6), in the absence of binding clarification, the court at this point finds the *Kelly* court's position most persuasive. *See, e.g.*, *MCI Commc'ns Servs., Inc. v. Sec. Paving Co., Inc.*, No. 15-1940, 2016 WL 1436521, at *4–5 (E.D. Cal. Apr. 12, 2016); *see also Iqbal*, 556 U.S. at 678 (a complaint must include sufficient factual matter to make a claim "for relief" at least "plausible on its face"). The court therefore applies the ordinary federal rules of pleading to LMI's request for punitive damages.

Punitive damages are appropriate if the defendant insurer is "guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); *Cates*, 21 Cal. 4th at 43–44. "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3).

This case, like many insurance cases, turns on the insurer's alleged "conscious disregard" of its insured's contract rights. The word "conscious" signals that the insurer knew what the likely consequences of its actions would be, and the word "disregard" signals that it chose to ignore those consequences. *See, e.g.*, *Taylor v. Superior Court*, 24 Cal. 3d 890, 895–96 (1979). In this vein, an insured plaintiff can support its request for punitive damages by proving the insurer had an established policy or practice of denying insurance claims. *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994) (citing *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 329 (1992)). For example, a case must go to the jury if the plaintiff presents evidence showing the insurer deliberately and systematically restricted its investigation of the facts so that it could withhold payments. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (citing *Hughes v. Blue Cross of N. Cal.*, 215 Cal. App. 3d 832, 847–48 (1989)). In short, punitive damages are not available to deter poor judgment and ineptitude, but may be awarded to punish an insurer for its socially unacceptable policies. *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979); *Hughes*, 215 Cal. App. 3d at 847.

LMI argues the following allegations allow the court to infer Steadfast is guilty of malice and oppression under section 3294(a), *see* Opp'n at 12–13:

- "Steadfast has repeatedly engaged in a pattern and practice of wrongfully disputing and withholding benefits due to LMI on these additional claims for which coverage is due under the ELI policy." First Am. Compl. ¶ 19.

9

1   •   "Steadfast failed and continues to fail to conduct adequate investigation of claims,
2    has disputed and continues to dispute factual matters with no reasonable basis for
3    doing so, and has insisted and continues to insist on interpretations of the ELI
4    policy that have no reasonable basis." *Id.*

5   •   "Steadfast has engaged in this conduct for its own financial benefit, and in order to
6    exert financial pressure on LMI and coerce LMI into accepting lowball settlements
7    of claims in exchange for releases of Steadfast's liability for its bad faith conduct.
8    Then, after execution of settlement agreements, Steadfast has violated its express
9    and implied obligations under those settlement agreements." *Id.* ¶ 20.

10   •   "Steadfast will continue to obfuscate, delay, mischaracterize, and otherwise breach
11    its obligations and cause additional damage to LMI unless relief is afforded . . . ."
12    *Id.* ¶ 21.

13   •   "Steadfast has engaged in its wrongful conduct not only with utter indifference to
14    the financial impact of its conduct on its insured but, on information and belief, in
15    a deliberate attempt to avoid the discovery of further insured claims, to deprive
16    LMI of the protection afforded by the ELI policy, and to use its claims handling
17    strategy as a tool for advancing its own financial interests in preference to those of
18    its insured." *Id.* ¶ 22.

19 Indeed these allegations allow the court reasonably to infer that Steadfast had an established
20 policy or practice of denying LMI's claims, and that it chose to ignore the clear consequences of
21 its denials. The motion is denied in this respect as well.

22 IV.   CONCLUSION

23    The court orders as follows:

24    (1) This order shall be filed in both cases captioned above, Nos. 2:16-cv-0291-
25 KJM-KJN and 2:12-cv-02182-KJM-KJN.

26    (2) Steadfast's motion to dismiss in Case No. 16-0291 is DENIED. This order
27 resolves ECF No. 11 in that case.

28

    (3) The Initial Status Conference in Case No. 16-0291 previously set for June 23, 2016 is VACATED and RESET for June 17, 2016, at 10:00 a.m., to coincide with the hearing on LMI's pending motion to consolidate.  A status conference is also SET for June 17, 2016 in Case No. 12-2182, at 10:00 a.m.

    (4)  By June 13, 2016, the parties in Case No. 16-0291 shall file the joint status report described in this court's previous order in that case, ECF No. 4, and in addition to the topics listed in that order, the parties shall address their respective positions on whether all or a portion of Case No. 16-0291 should be stayed, enjoined, or consolidated with Case No. 12-2182. In addition, by the same date, the parties in both cases shall file a joint report and address their respective positions on whether the scheduling order in Case No. 12-2182 should be modified to allow the filing of an amended or supplemental complaint.

    (5) The U.S. Navy's request to appear at the status conference, as reset for June 17, 2016, is GRANTED.

    IT IS SO ORDERED.

DATED:  June 8, 2016.

_____
UNITED STATES DISTRICT JUDGE