1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LENNAR MARE ISLAND, LLC,                          No. 2:12-cv-02182-KJM-KJN

12                         Plaintiff,

13             v.

14    STEADFAST INSURANCE COMPANY,

15                         Defendant.

16    _____

17    LENNAR MARE ISLAND, LLC,                          No.  2:16-cv-00291-KJM-KJN

18                         Plaintiff,

19             v.                                        <u>ORDER</u>

20    STEADFAST INSURANCE COMPANY,

21                         Defendant.

22    _____

23    AND ALL RELATED COURTER-CLAIMS
      AND CROSS-CLAIMS
24

25

26             This matter is before the court on the motion to intervene by the United States Navy

27    ("United States").  Case No. 12-cv-2182, Mot. to Intervene, ECF No. 384; Case No. 16-cv-291, Mot.

28    to Intervene, ECF No. 32.  Defendant opposes the motion.  Case No. 12-cv-2182, Opp'n, ECF No.

                                                    1

385; Case No. 16-cv-291, Opp'n, ECF No. 33.  Specifically, the United States moves to intervene in

two separate suits involving the same underlying facts and parties.  *See generally,* Case No. 12-cv-

2182; Case No. 16-cv-291.  On June 28, 2016, this court consolidated both actions for all pre-trial and

trial purposes.  *See* Case No. 12-cv-2182, Order June 28, 2016, ECF 382, at 1; Case No. 16-cv-291,

Order June 28, 2016, ECF 30, at 1.  This order treats the United States' two intervention motions as a

single motion.

This matter was submitted after a hearing on September 9, 2016, at which Dale Oliver

and Jack Bauman appeared for defendant Steadfast Insurance Company ("Steadfast"), Ryan Werner

and Jacquelyn Mohr appeared for plaintiff Lennar Mare Island, LLC ("LMI"), Adam Dawson

appeared for counter-defendant/counter-complainant CH2M Hill Constructors, Inc. ("CCI"), and J.

Taylor McConkie appeared for the proposed intervenor; the United States.  For the following

reasons, this court GRANTS the Unites States' motion to intervene.

I.      BACKGROUND

This court has reviewed the extensive facts of this case in prior orders.  *See, e.g.*, Case

No. 12-cv-2182, Order Dec. 16, 2913, at 2-3, ECF No. 81, Order Feb. 28, 2014, at 6-9, ECF No. 95;

Order Apr. 7, 2015, at 2-3, ECF No. 264; Order Oct. 16, 2015, at 1-4, ECF No. 306; Order March

31, 2016, at 2-4, ECF No. 354.  The following additional facts and procedural history are relevant to

the instant motion to intervene.

A.      The Clean-up of Mare Island Naval Shipyard

The parties in this case each dispute their obligations under various contracts and

insurance policies relating to the cleanup of the Mare Island Naval Shipyard located within the City

of Vallejo, California (the "City").  The Navy operated Mare Island from 1852 to 1996.  *See* Case No.

12-cv-2182, Joint Statement Disc. Dispute (JS), ECF No. 63, at 2.  The Navy closed the shipyard in

1996, and conveyed title to a portion of the Navy yard to the City in 2002.  *Id.*  As part of this

transfer, the Navy paid $86 million to shift environmental remediation responsibility to the City for

this parcel of land.  *See* Case No. 16-cv-291, Ex. 1 at 3, 10, Ex. 2 at ¶ 2, Decl. of Richard Green in

Support of Mot, ECF No. 32.  This agreement between the Navy and the City is referred to as the

Environmental Services Cooperative Agreement (ESCA).  Case No. 12-cv-2182, JS at 3.

1          Soon after the Navy and the City entered into the ESCA, the City sold its portion of

2   the Navy yard to LMI; the plaintiff in this case.  *Id.*  LMI then hired CCI, the counter-defendant and

3   counter-complainant, to remediate all known pollution conditions on the land for a "guaranteed

4   fixed price."  JS at 3.  This fixed price included the added cost of purchasing two insurance policies

5   from defendant Steadfast: A Remediation Stop Loss Policy (RSL) for remediating "known pollution

6   conditions" over a stated threshold, and an Environmental Liability Policy (ELI) for remediating

7   "unknown pollution conditions."  *Id.*  LMI tendered claims to Steadfast for pollution clean-up

8   expenses under the ELI policy, and CCI tendered such claims under the RSL policy; Steadfast now

9   denies liability under either policy.  Case No. 12-cv-2182, FAC ¶ 34; ECF 26 ¶ 34, ECF 5 ¶ 15; ECF

10  12 ¶ 15.

11         The dispute over liability for pollution remediation costs mentioned above is

12  predominantly between LMI, Steadfast and CCI, however the Navy retained some remediation

13  rights and responsibilities with respect to the portion of the Navy yard conveyed to the City.  The

14  Navy has limited rights as an "additional insured" under the ELI insurance policy for claims that

15  "aris[e] out of the activities, liabilities and obligations of the Navy at the Covered Location: Coverage

16  A.1 only."  *See* Mot. to Intervene at 3 (citing Case No. 12-cv-2182, ECF 164-1, at 183).  Additionally,

17  the Navy retained pollution remediation responsibilities under its ESCA with the City for certain

18  "Navy-retained" conditions (such as radiological, chemical, or biological warfare agents), all

19  "uninsured unknown pollution conditions", and "known pollution conditions" above a $114.3

20  million cap.  *See* Ex. 1, Decl. of Richard Green, at 4 (§ 206).  These areas of Navy responsibility may

21  be relevant in the current court proceedings in two ways: (1) In April 2012, the remediation costs for

22  known conditions reached the $114.3 million cap, so any future remediation costs of known

23  conditions could fall to the Navy, JS, at 3; and (2) one of Steadfast's affirmative defenses references

24  the Navy-retained conditions as a bar to coverage.  *See* Mot. to Intervene at 4; Case No. 12-cv-2182,

25  ECF No. 26, at 7; Case No. 16-cv-291, ECF No. 26, at 11.

26  /////

27  /////

28  /////

3

B.      Procedural History

The procedural history in this case is extensive.  This section reviews only the procedures relevant to the instant motion to intervene.

1.      Consolidation of the 2012 and 2016 Cases

In August 2012, LMI initiated its first case against Steadfast, asserting breach of contract and declaratory judgment claims under the ELI insurance policy for costs and cleanup of seven "sites" within the portion of the Navy Yard that was transferred to the City.  *See* Mot. to Intervene at 4 (citing Case No. 12-cv-2182, ECF Nos. 1 & 22).  In February 2016, LMI brought a second suit against Steadfast, asserting very similar claims under the same ELI insurance policy, but this time the complaint references an additional eighteen "sites" on the portion of the Navy Yard that was transferred to the City.  *See id.* (citing Case No. 16-cv-291, ECF Nos. 1 & 9).  As noted, in June 2016, the court consolidated the first and the second cases for all pretrial and trial purposes.  *See* Case No. 12-cv-2182, Order June 28, 2016, ECF 382, at 1.  Discovery in the consolidated case closes on April 7, 2017.  Case No. 12-cv-2182, Order June 22, 2016, ECF 379, at 2.  The consolidated case is currently set for trial on October 16, 2017.  *Id.* at 8.

2.      United States' Notice of its Potential Intervention Motion

On May 26, 2016, the United States filed a Statement of Interest to inform the court and counsel of its potential intervention motion.  Case No. 12-cv-2182, ECF No. 362.  Counsel for the United States also appeared at the initial scheduling conference for the 2016 case on June 17, 2016, and reiterated the potential that the United States would seek intervention.  Case No. 16-cv-291, ECF No. 25.  These communications followed by nearly two years the Navy's informal participation in a settlement conference before the Magistrate Judge.  See ECF 121 (minutes for July 9, 2014 settlement conference).

On August 8, 2016, the United States filed the present motion to intervene.  Case No. 12-cv-2182, ECF No. 384; Case No. 16-cv-291, ECF No. 32.  The United States did not file a separate complaint in intervention, and instead purports to incorporate LMI's existing breach of contract and declaratory judgment claims arising out of the ELI insurance policy, under which the United States is an additional insured.  Mot to Intervene, at 14:13–22.  On August 26, 2016,

1   defendant opposed.  Case No. 12-cv-2182, ECF No. 385; Case No. 16-cv-291, ECF No. 33.  Also, on

2   August 26, 2016, LMI and CCI filed statements of conditional non-opposition to United States

3   intervention.  Case No. 12-cv-2182, ECF No. 387; Case No. 16-cv-291, ECF No. 34.  On September

4   2, 2016, the United States replied.  Case No. 12-cv-2182, ECF No. 389; Case No. 16-cv-291, ECF

5   No. 35.

6   II.      DISCUSSION

7                  When an outside entity wants to become a party to a lawsuit in progress, that entity

8   may file a motion to intervene as provided by Rule 24 of the Federal Rules of Civil

9   Procedure.  Generally, to be admitted into the lawsuit, the intervenor must have an interest in the

10  subject matter of the original suit.  Rule 24 permits two types of intervention: intervention as of right,

11  and permissive intervention.  Rule 24 subsection (a) governs intervention by right, and provides in

12  part:

13              On timely motion, the court must permit anyone to intervene who …
            claims an interest relating to the property or transaction that is the
14              subject of the action, and is so situated that disposing of the action
            may as a practical matter impair or impede the movant's ability to
15              protect its interest, unless existing parties adequately represent that
            interest.

16

17  Fed. R. Civ. P. 24(a).  Rule 24 subsection (b) governs permissive interventions, and provides in

18  relevant part, '[u]pon timely application, anyone may be permitted to intervene in an action ... when

19  an applicant's claim or defense and the main action have a question of law or fact in common...."

20  Fed. R. Civ. P. 24(b).

21                 Here, the United States cites both subsections (a) and (b) of Rule 24 as bases for its

22  intervention, in addition to the statutory grants of intervention in 28 U.S.C. §§ 517-518.  At hearing,

23  both parties agreed the substantive result would be the same regardless of which procedural avenue

24  the court employs to grant intervention, if it does.  The United States also stated no preference as to a

25  procedural avenue.  Because the court finds the United States satisfies the more lenient requirements

26  for Rule 24 (b) permissive intervention, the court need not address the more contentious question of

27  whether the United States has a right to intervene under Rule 24 (a) or 28 U.S.C. §§ 517–518.

28  Section A of this order describes how the United States meets the requirements for permissive

1    intervention under Rule 24 (b), and section B explains why the court requires the United States to file

2    a separate complaint.

3          A.    <u>Legal Standards for Permissive Intervention under Rule 24 (b)</u>

4          The court's discretion to grant or deny Rule 24 (b) permissive intervention is

5    broad.  *See Spangler v. Pasadena City Bd. Of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (citing *United*

6    *States v. Board of School Commissioners*, 466 F.2d 573, 576 (9th Cir. 1972).  In this circuit, however,

7    "there are three necessary prerequisites for allowing permissive intervention."  *San Jose*

8    *Mercury News v. United States Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999); *see, e.g., United States v.*

9    *City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002); *LULAC v. Wilson*, 131 F.3d 1297, 1308 (9th Cir.

10   1997); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir.1996); *Beckman Indus.,*

11   *Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).  These prerequisites include: (1) an independent

12   ground for jurisdiction over the intervenor's claims; (2) a timely intervention motion; and (3) a

13   common question of fact or law between the intervenor's claims and the main

14   action.  *San Jose Mercury News*, 187 F.3d at 1100 (quotations and citation omitted).  In addition to

15   these three prerequisites, courts consider discretionary factors such as any assistance the intervening

16   party could provide in the case, versus any delays or prejudice the proposed intervention could cause

17   the original parties.  *See Spangler*, 552 F.2d at 1329 (citing *Hines v. Rapides Parish School Bd.*, 479 F.2d

18   762, 765 (5th Cir. 1973)).  The court next explains how the three-factor test and additional practical

19   considerations all support a grant of permissive intervention in this case.

20         1.    <u>Independent Basis for Jurisdiction</u>

21         The first of the three prerequisites for permissive intervention in this circuit concerns

22   subject matter jurisdiction.  "A party seeking permissive intervention ... must establish a basis for

23   federal subject matter jurisdiction independent of the court's jurisdiction over the underlying

24   action."  *EEOC v. Nevada Resort Assoc.*, 792 F.2d 882, 886 (9th Cir. 1986).

25         Here, the United States has proffered an independent basis for jurisdiction, 28 U.S.C

26   § 1345, and defendant does not contest that basis.  *See* Mot. to Intervene at 13.  Section 1345 grants

27   this court "original jurisdiction" over "civil actions, suits or proceedings commenced by the United

28

1  States…."  28 U.S.C. § 1345.  The United States is proposing to intervene as a plaintiff in this case,

2  incorporating LMI's claims against Steadfast, and would therefore "commence" the independent

3  action as required for jurisdiction under § 1345.  Accordingly, the court finds the United States meets

4  this jurisdictional prerequisite for permissive intervention.

5          2.     <u>Timeliness</u>

6          The second prerequisite for permissive intervention in this circuit is a timely

7  application for intervention.  *Peruta v. Cnty. of San Diego*, 771 F.3d 570, 572 (9th Cir. 2014)

8  ("'Intervention, both of right and by permission, can occur only '[o]n timely motion.' ") (quoting

9  Fed. R. Civ. P. 24(a)-(b)), *rev'd en banc on other grounds*, 824 F.3d 919 (9th Cir. 2016).  Courts in the

10  Ninth Circuit evaluate the timeliness of a motion to intervene in terms of "(1) the stage of the

11  proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the

12  reason for and length of the delay."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir.

13  2004) (citing *Cal. Dep't. of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F. 3d 1113,

14  1119 (9th Cir. 2002)) .  Failure to meet one or more of these factors, however, does not automatically

15  render an application for intervention untimely.  After all, the "[m]ere lapse of time alone is not

16  determinative."  *United States v. State of Or.*, 745 F. 2d 550, 552 (9th Cir. 1984) (granting intervention

17  in a two-year old case where the litigation was "entering a new stage").  Rather, whether this delay in

18  intervention would actually prejudice the existing parties is "the most important consideration in

19  deciding whether a motion for intervention is untimely."  *Id.* (citing 7C Charles Alan Wright *et al.*,

20  Fed. Prac. & Proc. Civ. §1916, 574 (1972)*); see e.g.*, *Cal. Dep't. of Toxic Substances Control*, 309 F. 3d at

21  1119–1120.  Ultimately, the determination of timeliness is left to the court's discretion and is liberally

22  construed.  *See Alisal Water Corp.*, 370 F.3d at 921 (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156

23  (9th Cir.1981)).

24          Here, notwithstanding the four-year time lapse since LMI's initiation of its 2012 law

25  suit against Steadfast, the United States' motion to intervene is timely.  The reason the United States

26  seeks intervention only now, as opposed to in 2012, is because the consolidation of cases just this

27  year ushered in a new and expanded phase of litigation.  Mot. to Intervene at 9; *see* Case No. 12-cv-

28  2182, Order June 28, 2016, ECF 382, at 1.  The expansion of the law suit prompted the United

1    States' detailed process of internally investigating the potential for United States intervention.  Mot.

2    to Intervene at 9.  The court need not intensely scrutinize the amount of time and the reasons behind

3    the United States' delay in filing this application, because the factor of primary import is whether the

4    delayed intervention would cause prejudice.  *See State of Or.*, 745 F.2d at 552 (citing Wright *et al.*,

5    *supra*, § 1916, at 574).  Defendant does not contend the United States' intervention would cause

6    prejudice or undue delay, and the court finds intervention at this time would cause neither, with the

7    requirement of the filing of a complaint in intervention as ordered below.  The United States'

8    intervention will cause minimal disruption to the timeline in this suit, as discovery in the

9    consolidated case remains open for another seven months, and the trial date is over a year away.  *See*

10    Order June 22, 2016, ECF 379, at 2, 8.  Moreover, the United States represents it seeks to intervene

11    only to support LMI in its existing claims against defendant, and is not seeking to introduce new

12    issues.  Mot. to Intervene at 8.  Lastly, the United anticipates it can comply with all previously set

13    court dates and schedules.  Mot. to Intervene at 6.

14         The court therefore finds the motion for intervention timely.  Accordingly, the United

15    States meets this second prerequisite for permissive intervention.

16              3.      Common Questions of Fact and Law.

17         The third prerequisite for permissive intervention is the existence of a common

18    question of fact or law between the intervenor's claim and the original plaintiff's claims.  *Freedom from*

19    *Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (citing *Beckman,* 966 F.2d at 473).

20    "A common question of law or fact routinely exists if the intervenor has a claim against the

21    defendant that is identical to a claim asserted by the existing plaintiff."  *See* 3B  J. Moore, Moore's

22    Federal Practice ¶ 24.11 (3d ed. 2012).

23         Here, the United States is not adding different claims; it merely seeks to join LMI's

24    claims for breach of contract and declaratory judgment under one of Steadfast's insurance policies.

25    Consequently, the United States' claims and the existing plaintiff's claims comprise exclusively

26    common questions of fact and law.  Moreover, defendant acknowledges the United States would not

27    be raising any new issues or claims.  Opp'n at 1:22, 5:10.  Accordingly, the United States meets this

28    third and final prerequisite for permissive intervention.

1              4.       Additional Considerations for Permissive Intervention.

2              In addition to the three prerequisites for permissive intervention outlined above,

3       practical and equitable considerations play a large role in a court's decision to grant or deny

4       permissive intervention.  *See Spangler,* 552 F.2d at 1329; *Alisal Water Corp.*, 370 F.3d at 919.  As such,

5       whether an intervenor's presence would prejudice the parties or delay the litigation, or whether the

6       intervenor would contribute to the development of the facts and the equitable adjudication of the

7       legal questions, are important considerations.  *Spangler*, 552 F.2d at 1329 (citing *Hines*, 479 F.2d. at

8       765).  Ultimately " 'the requirements for intervention are broadly interpreted in favor of

9       intervention." '  *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *Alisal*

10      *Water Corp.*, 370 F.3d at 919).

11             Here, the United States' presence will assist the court in developing the facts and

12      adjudicating legal questions in this suit, and the intervention will cause minimal delay or prejudice.

13      The United States' intervention will not unduly prejudice Steadfast, because the United States is not

14      bringing new claims or expanding the scope of the lawsuit.  *See* Mot. to Intervene at 13.  Rather, the

15      United States is lending support to LMI's existing claims.  *Id.*  The United States' intervention also is

16      not an unpredictable or unfair revelation in this case.  The subject matter of this dispute itself puts

17      defendant on notice of the United States' interest in this case, because the contracts at issue cover

18      pollution remediation on a United States Navy base for which the Navy retains some responsibility.

19      *See* Ex. 1, Decl. of Richard Green, at 3.  As noted, the United States also signaled its potential

20      intervention twice this year.  Case No. 12-cv-2182, ECF No. 362; Case No. 16-cv-291, ECF No. 25.

21             Additionally, the subject matter of this suit renders the United States' involvement

22      potentially helpful to the court's understanding of the issues, regardless of the ultimate outcome of

23      the case.  This suit involves complex contractual disputes over the cleanup of a United States Navy

24      base, and the contracts involve at least some provisions related to Navy-specific activities, such as the

25      use of biological warfare agents.  *See* Ex. 1 to Decl. of Richard Green.  Even if the Navy-retained

26      responsibilities are potentially minimal, the United States is in a position nonetheless to assist this

27      court's comprehension of the facts and applicable law.  In sum, the addition of the United States to

28

9

1   this suit has few if any prejudicial effects, and substantial benefits.  These practical considerations

2   weigh in favor of granting Rule 24 (b) permissive intervention.

3          Because the United States meets the three prerequisites for permissive intervention,

4   and because further practical considerations militate in favor of United States' intervention, the court

5   hereby grants the United States' motion to intervene.  Next this court addresses whether the United

6   States should be required to file a separate pleading to clarify its specific interests in intervention.

7        B.    <u>Complaint in Intervention</u>

8          The United States represents it seeks only to adopt LMI's existing claims under the

9   ELI insurance policy, and therefore the United States did not file a separate complaint in

10   intervention.  Although Federal Rule of Civil Procedure 24 (c) requires an intervenor's motion to

11   "state the grounds for intervention and be accompanied by a pleading that sets out the claim or

12   defense for which intervention is sought," the Ninth Circuit has "approved intervention motions

13   without a pleading where the court was otherwise apprised of the grounds for the motion."  *Beckman*,

14   966 F.2d at 474 (citing *Shores v. Hendy Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943).  At hearing,

15   defendant cited the Seventh Circuit case of *Partridge v. J.H. Harris* as an instance in which the United

16   States was not allowed to intervene by simply "adopt[ing] the pleadings of an original party…' "

17   2006 WL 1215189, *3 (7th Cir. 2006) (quoting *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987)).

18   The *Partridge* court reasoned that "[a]lthough the United States [] described its 'interests' in the

19   current litigation, those interests, at least as currently articulated, d[id] not state a claim or defense"

20   and therefore could not serve as a proper basis for intervention.  *Id.* (citations omitted).

21          Here, the United States' intervention motion provides enough information to state a

22   claim and for the court to grant intervention.  The court however requires the United States to file a

23   separate pleading to fully apprise defendant and the court of the basis for its claims in intervention.

24   In a complex multi-party case such as this one, a separate pleading will assist the court in policing the

25   parameters of the case in intervention.  The United States acknowledges the potential for divergence

26   of interests with LMI on certain issues and defenses, bolstering the advisability of a separate

27   complaint.  *See* Mot. to Intervene at 12.  As an additional insured under the ELI insurance policy, the

28   United States presumably enjoys somewhat different contractual rights than LMI does as the primary

1    insured.  *See* Mot. to Intervene at 3, 8, 13; Case No. 12-cv-2182, ECF 164-1, at 183.  A separate

2    pleading will more effectively inform other parties and the court of the exact contours of the United

3    States' claims.  Accordingly, the court orders the United States to file its complaint in intervention

4    within fourteen days of the date of this order.

5    III.    CONCLUSION

6            This court GRANTS the United States' motion to intervene, and limits the United

7    States' intervention to breach of contract and declaratory judgment claims arising out of the ELI

8    insurance policy, under which the United States is an additional insured.  For the reasons discussed

9    above, the court orders the United States to file a separate complaint in intervention within fourteen

10   days of this order.  All initial disclosures required by Federal Rule of Civil Procedure 26 (a) related to

11   the United States' claims must be made no later than thirty days from the date of this order.

12           This order resolves Case No. 12-cv-2182, Mot. to Intervene, ECF No. 384, and Case

13   No. 16-cv-291, Mot. to Intervene, ECF No. 32.

14           IT IS SO ORDERED.

15    DATED:  October 5, 2016.

16

17    _____

18    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28